Himes, are you there? Yes, I'm here. And Mr. McManus? Yes. Great. Case number 20-1546, William Barahona v. William Barr. Ms. Himes? Hello, your honors. My name is Allison Himes, and I represent the appellant in this action, William Rubio Barahona. And I have reserved four minutes for rebuttal time. Your honors, there are three errors that I plan to discuss today. The BIA failed to determine what the standards are for probable cause. The BIA failed in finding the IJ as immigration judge, failing to make the appellant's alleged crime as serious. And then three, the BIA's error in applying the incorrect standard review in their decision affirming the IJ's decision. This case is primarily about uniform legal standards. This case is about the standard that we hold ourselves to as a democracy, and proof is required to condemn people. We must never lose sight of that. My client is from El Salvador, and he came to the United States looking for refuge, as so many do. Almost every member of his family has experienced egregious acts of violence at the hands of MS-13 in El Salvador. His sister was raped, his dad was nearly killed as a police officer, his wife was raped and left in a field. William and his mother were extorted for money when he was a child. He grew up with more abuse than any average person would. He spent most of his time as a young adult fearing being killed by the gang. William was ultimately shot and left for dead, but survived and escaped El Salvador. The contention that he would join the very gang that caused so much fear and grief in his family is ludicrous. William's wife received asylum... Wait, wait. It's not... Under the situation here, ludicrous is far too strong a word. Don't you agree, counsel? There's a red notice out, as you know, and so to say it's ludicrous, I mean, I don't... Tell me if I don't understand the case. Based on the facts that the appellant testified to and his wife in seeking asylum and winning her own situation, I do say that it is ludicrous, as both of them were found to be credible in their testimonies as to the violence that they experienced. But didn't he admit, didn't he admit to being a hitman and doing all kinds of, a few different kinds of things? Absolutely not. He never admitted to being a hitman. In fact, he adamantly denied being a hitman and ever harming anyone in that way. He said that it was... But he did admit to being a messenger boy of some sort for the gang, right? Because his claim is, is that the term that was used either meant hitman or messenger boy. And so while other people have said he was a hitman, he's saying, oh, it was just a guy who carried messages. He did admit to doing tasks for the, for MS-13 under duress, one being delivering packages. But he did risk being killed if he did not do those things, as was evident. And ICE admits in their own brief that there are seldom, there's seldom anybody in El Salvador who isn't affected by MS-13 in some way. So to state that him doing tasks under duress by the gang would deny him any sort of ability to apply for asylum on its face would mean that nobody from El Salvador could apply for asylum. Counsel, is this, is, I think this is resolved, isn't it, by the IJ and the BIA decision? Because they're the ones that weigh evidence, they're talking about the preponderance of the evidence, and we're not. Yes, this is not about the truthfulness of any sort of fact in this case, as we're talking about standards of law in this case, which is why it should all be reviewed de novo. Because what we're talking about is the legal standard for probable cause and whether or not the red notice actually rose. Talk about that, please. Okay, so generally speaking, a red notice cannot be trusted. So not based on the specific facts in this case, but just generally speaking, the first glaring issue with red notices is that we don't even understand the justice system in El Salvador and whether or not it's, it's trustworthy. They don't have... Counsel, you're back to facts. I don't, I don't mean to be rude here, but you're getting back toward facts. The BIA says a red notice is reliable for what it purports to be, namely a country. That's true, right? No, your honor. The truthfulness of a red notice is very, is very much part of establishing whether or not probable cause exists because the truthfulness and veracity is part of determining probable cause. Wait, does it just shift the burden? I'm going to get you the issue. Does it just shift the burden? Is a red notice just enough to put the burden on your client to come forward and say what really happened? That's exactly my argument, your honor. Is that a red notice? That's exactly my argument, your honor. A red notice on its own is not enough to shift the burden to the respondent or the appellant in this case to prove that by a preponderance of the evidence that he did not commit a serious nonpolitical crime. So is your argument essentially that the red notice gives rise to a suspicion, but not probable cause, and therefore the burden still rests on the government to establish probable cause? Is that, is that, is that what you're saying? Yes, anything lower than probable cause would probably just be reasonable suspicion. The only other case law I can think of would be Terry v. Ohio, and that is something that's considered lower than probable cause is a Terry SOP. So in this case, all of the case law cited, matter of EA, matter of NBC, matter of NAM, they all cite that serious reasons to believe is equal to probable cause. Council, very quickly here, your time's winding down, address the NBC case and our merit cases, because as you know, the BIA believes that those two mean that it's less than a preponderance. It's just a some evidence standard I'm quoting. So please address how we deal with those, and are we bound by them? We are bound by the case law in NBC and matter of EA. In this case, NBC, in their case, that was a case of a person committed of committing atrocious war crimes. He, back in Bosnia or Hezbollah, whichever country at the time, he was accused of killing people as a member of the military. And he falsely testified that he was never a member of the military. So that the proof that they had to prove that he had committed these atrocious war crimes didn't involve a red notice. So it's not super equivalent to the case that we have here, but they did have copious amounts of evidence. They had expert testimony. Well, it only takes some evidence. The word in NBC and the word we have in Merrick is some evidence. If the record has some evidence, then the burden shifts, right? You're correct. It says some evidence to establish probable cause to show that a serious crime has been committed, or in his case, war crimes. But in that case, all we have to go off of is what would rise to the level of some evidence or probable cause is multiple pieces of evidence, including expert testimony, his own false testimony, pictures of him in military uniform, and I don't know, a report or something from the government in Bosnia-Herzegovina stating that he was in fact in the military. And that's what rose to the level of probable cause in that case. In other cases, it's less than that. So your argument is some evidence is the functional equivalent of probable cause? My argument is that we're not exactly sure what some evidence equates to or what, I don't know that we can assign a hard number to what some evidence would be. How close is it? Well, let me ask you this way. Is it probable cause or is it reasonable suspicion when you say some evidence? Which is it? Probable cause. Okay, good. So proceed. In this situation, and in every case cited, it says that some evidence is the same level of probable cause. And in NBC, the court is arguing about whether or not the standard should be a preponderance of the evidence. And they say, no, it is not an onerous standard, that it does not rise to the level of preponderance standards. It is some evidence. And they say that that means probable cause, that that's the level that they have to meet. And since then, that's what's been cited. And so here I'm saying that a red notice alone does not rise to the level of verifiable evidence. They had no evidence to verify that this red notice was based on anything. And I'm worried about the precedence that this case would set if we allow countries like Russia, China, Venezuela to use red notices alone to not allow someone to be granted asylum. Well, counsel, isn't a lot of your, to the extent you're arguing policy, isn't a lot of taking care of way of because it has to be a non-political crime. It cannot be a political crime. And that's a different issue not presented in this case, right? Well, so the probable cause standard is used in many different areas in immigration law. So it wouldn't just deny somebody, a red notice could possibly deny someone the right to seek asylum in many different cases beyond just my own. So I am worried about a red notice rising to the level of probable cause on its own because it can affect more immigration cases than just this one. But even in this one, it doesn't rise to the level that's required because our own justice department, our own, our own government says that red notices do not rise to the level of probable cause required to arrest someone. And I don't see why probable cause should be defined differently in the criminal context versus in the immigration context. Counsel, I have a question that regard, and I may ask this to your counterpart as well, but in the government's brief, they stayed on page one, the agency relied in part on an Interpol red notice. Do you know what else they relied on? The immigration in the, in the original case? Yes. Yes. So in the government's brief to the Eighth Circuit, they list three things that they relied upon. They said that they relied upon the I-213, the red notice, and then my client's own testimony. However, they did not make that, ICE did not make that argument in their brief to the BIA. They didn't make that argument in front of the immigration judge. And I would argue that they waived that argument completely, that my client's own testimony could be used as evidence in proving that they had probable cause, particularly because they have to show probable cause to bar him from seeking asylum before he even testifies. So he hadn't even testified when they said that this bar was created. So they can't use his testimony ad hoc. So that's why you're saying that it's the red notice alone that's being relied upon and that's your concern? Yes. And the I-213 is just a government form that ICE uses and they fill it out. So it's, they're basing the information in the I-213 based on what they read in the red notice. So it's essentially the same document. So yes, I'm, I'm saying that the only thing that they're relying upon is a non-verifiable red notice. And I would also argue that they reached out to El Salvador, I'm sorry, I'm running out of time, but I'll just go into my rebuttal time a little bit here to answer your question fully. They, they did reach out to El Salvador because we have an extradition treaty and El Salvador did not respond to them, which I would argue points to the fact that the red notice was not, was not legitimate. He was not a legitimate threat to, to El Salvador and thus they did not need him. Or it could show that the case was dismissed as he contended in the first place or any cases that might've been against him were dismissed. But your honors, I will reserve the remaining of my time for rebuttal if you'll allow me. You may. Thank you. Mr. McManus. Thank you very much, your honor. Good morning and may it please the court, Keith McManus on behalf of the respondent. There's a lot to unpack your honor from Ms. Hymas's presentation. And I'd like to start if I could with trying to start at the beginning and then try and work our way through these various points. In the government's view, the only issue here, the only question before the court is given the evidence presented and the entirety of the administrative record, whether the agency reasonably concluded and whether substantial evidence supports the determination that petitioner is ineligible for relief and protection because there are serious reasons for believing he committed a non-serious political crime. I beg your pardon, a serious non-political crime in El Salvador. And at bottom, your honor, this case is about evidence and burdens of proof. And I want to start with the first thing I think that has gotten a little confused or conflated here. The issue of what serious reasons for believing means. It is true that the agency and the courts have recognized that serious reasons is akin to probable cause. That does not mean, your honor, and there is nothing in the regulations or the statute that requires a government entity, whether it be DHS or the agency, to satisfy a burden of probable cause. What it means is, did the agency have enough evidence before it to assume that, and serious reasons just means, was there probable cause to believe that a crime had been committed? That is the ultimate agency determination that needed to be made here in order to invoke the bar. It is not somehow DHS' burden to establish in the first instance that probable cause exists or that there are serious reasons for believing. It is ultimately and only petitioner's burden to establish that the bar does not exist. And I think that there's a lot of confusion in the briefing on that. Well, if you have the red notice alone, does the red notice alone, is it probable cause? Yes or no? I think the answer could be yes. It depends on the case, your honor. Well, no, it shouldn't depend on the case. You got one red notice and it either is or isn't probable cause. But that ignores the realities of the case, your honor. And as Judge Grass suggested, there is other evidence in this case. And to be clear, the agency focused, I think, a lot on the red notice for good reason. But there is other serious reasons for believing. And again, this gets into, there's a lot of confusion about the threshold determination. And that, I think, is the key here that separates probable cause and serious reasons for believing from what's really at issue in this case. I think, Judge Benton, your question actually goes more toward was the red notice enough to trigger the threshold burden shifting? And that's the key. And frankly, burden shifting is a misnomer here. Because again, the government bears no initial burden. Although I think the IJ and the board certainly treated and held DHS to some sort of threshold requirement. You can't argue it's not burden shifting when that's the term the agency uses in the decision that you're defending. I agree. Be careful where you take us. No, I apologize for that, your honor. I don't mean to take you away from that. Make no mistake, the agency here in this case certainly held DHS to what I will call an imaginary burden. And I only say that in light of the Attorney General's most recent decision on a similar mandatory bar. I know it came at the 11th hour and I apologize to both petitioner's counsel and the court for that. But the very recent decision in Negussie makes plain that in this context, when a mandatory bar to relief and protection applied, there is no initial burden on the government. Nevertheless, your honor, nevertheless, that is certainly what whether the red notice, even on its own, but here coupled with other evidence, gets over the What other evidence can you point to? I look at the I-213. Does it add anything to the red notice? I don't think it does, your honor. I don't think it does either. Okay. Now, then you only get his testimony right if the burden shifts. Because that's what the agency says on page four. It says it right there. So help me. Well, I mean, I think that's true then, you're saying the red notice is the only piece of evidence in order to give the presumption that the bar may apply. Because that again is the standard. And I think Ms. Hymas did talk about this, right? Both cases like NBC, cases like Merrick, cases like Nadai in this court, Hernandez, cases that involved other mandatory bars to relief and the application of 8 CFR 1240.8D make clear that that initial threshold is a very low bar. It's not an onerous burden, and it doesn't take a whole lot of evidence to get you over the hump. And so in this case, even if the I-213 had to stand on its own, and again, your honor, I do want to make clear that even if you agree that the agency referred to it as burden shifting, but it only shifts the burden in the sense that it changes it. And what I mean by that, again, there is no doubt that based on the language of the statute and the regulations, petitioner is only person who bears a burden of establishing his eligibility for relief and protection. And that includes proving that he is not subject to a mandatory bar. So that first threshold question discussed in cases like NBC and certainly the board's decision here is whether or not there's enough evidence to assume the bar applies and then hold petitioner to his pre-existing burden of establishing by a preponderance that it does not apply. And so here, I do think that the red notice is enough. I agree, your honor, the I-213 probably just sort of bolsters the information we have in the red notice. And even if I'm having trouble ignoring petitioner's red notice, I do think that the agency and the court somehow should ignore his in-court testimony because the burden hadn't shifted at that point. Again, that ignores the realities of him being held to his burden throughout the entirety of the proceedings. If it's his burden to establish his eligibility for relief and protection, he cannot ask the agency and the court to ignore his own sworn testimony. I mean, that makes no sense. And so in this case, again, even if the red notice, there's no specific evidence in this case questioning the validity of this particular form or the fact that El Salvador had issued a valid national arrest warrant, which according to the red notice was in the possession of the secretariat and had been verified by DHS through record checks in the I-213. But I will say, your honor, again, the court's review requires a holistic view of the evidence. And the ultimate question is whether or not the record compels only a contrary conclusion, compels reversal of the agency's decision here. And again, that allows the court to certainly consider and look at the testimony, which petitioners, I think it was Judge Erickson who might have mentioned this, petitioner testified that he did, quote, a bunch of stuff for MS-13, including delivering packages of drugs and weapons, serving as a lookout or snitch, and doing these things, quote, many times. Certainly running guns and drugs and serving as a lookout, that's not a trifling matter, your honor. And he also admits to being charged with a crime around the age of 17. I believe it was in 2010. This stemmed from, I think, the melee with a suspected police officer where a petitioner was actually shot, ended up in the hospital, and then was charged with a weapons offense. But he admitted to going to court and being, I think, being saddled with some sort of community service after the fact. So, again, as a whole, the record amply supports the conclusion that there are at least serious reasons for believing, at least probable cause for believing that petitioner committed a serious nonpolitical crime in El Salvador. And ultimately, your honor, that's the only question. And the courts should only be concerned with whether or not the record compels reversal of that determination. Again, I think it was Judge Benton who also pointed out the degree to which this crime or the alleged crimes are nonpolitical is not at issue in this case. Obviously, petitioner's crimes involve only sort of gang-related activities. There's no political dimension to them. And I don't believe Ms. Hymas had time to get to this point, but there really is no merit to any claim that the agency failed to conduct the appropriate analysis into the seriousness of the crime. Both the IJ and the board relied on the information in the red notice, which can only be issued if the issuing state or I should say issuing nation determines that there was a serious ordinary law crime committed. The statute that or the article that is identified in the red notice criminalizes participation in illicit organizations whose purpose is to commit crimes and that do so with violent means. And the max term of imprisonment for the alleged conduct was nine years. And so the agency reasonably found that there was a substantial risk of violence and harm to persons based on this conduct. And that is enough to get to establish the seriousness of the offense. You've not addressed the Merrick case. Tell me the extent to which we're bound or not bound by the Merrick case. Well, Merrick, your honor, involved a different mandatory bar. And if I have the case in front of me, I just want to make clear this was a different discretionary waiver of removal. It was not directly asylum and withholding. But it is nevertheless a mandatory bar to relief. And the court is bound by Merrick in the sense that Merrick actually was cited with approval in MMBC, which is the board determination, again, dealing with a different mandatory bar, one which disqualifies applicants who have participated in extrajudicial killings. But both of those cases together, Merrick and MBC, stand for the proposition that is the fundamental basis of the government's position here, which is that under 1240.8D, the regulation, and also the concurrent regulations dealing with asylum and withholding in particular, 1208.16D2 and 1208.13, oh, forgive me, your honor, I forget the subsection for the asylum provision. But nevertheless, they all overlap. And the provisions provide that if the evidence indicates, that is the standard. If the evidence indicates that a mandatory bar to relief may apply, it's very critical. If the evidence indicates that a bar may apply, then the burden shifts to the petitioner to establish by preponderance of the evidence that it did not. And the agency faithfully applied those standards to this case and held petitioner to his burden. And ultimately, the agency's conclusion that he failed to satisfy his burden is not, the record does not compel reversal of that decision. And unless there are any more questions, your honor, government will rest on its briefs. Okay, let me check with the other two judges. Judge Gross, Judge Erickson, I see the shaking heads. And so therefore, thank you for your argument. Ms. Hymas, we're back to you. Thank you. The government is essentially arguing that there are no standards for reaching a conclusion that someone is barred from seeking asylum. And I don't know how anybody is supposed to defend themselves in any situation where they're trying to seek asylum with that kind of no standard. See, the case that keeps getting cited, matter of NBC, specifically states, and he said this even in his argument, if the evidence indicates that one or more of the grounds of mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence. But if you reach further into the case, it specifically says that, in using the terms indicates and may apply together, does not create an onerous standard and necessarily means showing less than preponderance of the evidence standard. So they're saying that it doesn't have to rise to a preponderance of the evidence standard. It can be less than that. And then in every other case, they make the equivalent to probable cause. That's the standard here. I don't know how we're reaching anything lower than that, because that's what is said. And if there's anything lower than that, it's not specifically stated on how you're to talk about the seriousness of the crime and what rises to the level of serious. No statute, no case law discusses where serious is defined other than a footnote in matter of EA that states a substantial risk of violence. And I don't know how respondents are supposed to do that analysis based on a footnote. It doesn't provide any sort of rigid outline as to what you're supposed to do to reach the conclusion that something isn't a crime of violence. In every other area of immigration law that has to do with crimes of violence, there's very serious standards that you're supposed to follow that can allow you to reach the conclusion that a crime is considered serious. And in this case, we just don't have that. We don't know how we're supposed to analyze a foreign statute for that. But I would tell you that looking at the foreign statute, it does not require serious violence in the statute. The judge lists the statute in the IJ decision, and I don't see where in the statute it requires violence in order for someone to be found guilty of that statute. It does talk about a group of people with their aim to commit crimes, but it doesn't say that those crimes have to be violent. And so that's why I argue in my loitering for all we know, but we don't. And so to say that he's committed a serious non-political crime is something that we just can't find based on the evidence that's in front of us, because all we have is a red notice that lists the statute. We don't have the underlying arrest warrant. We don't have any sort of affidavit from the police. We don't have a request from El Salvador for his arrest based on any particular crime that he committed. We don't even know what led to the warrant in the first place. That's why I say that you cannot use a red notice on its own as grounds for probable cause. And without your honors, I would just ask that you remand and send the case back down to the IJ for further conclusions. Thank you. Thank you both for your arguments. Case number